**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

MICHAEL BRUTSMAN,

      Plaintiff,

v.                                                            Case No. 8:24-cv-720-WFJ-NHA

RAYTHEON TECHNOLOGIES
CORPORATION,

      Defendant.

_____/

## ORDER

      Before the Court is Defendant's Motion for Summary Judgment (Dkt. 47),

Plaintiff's response (Dkts. 50, 51), and Defendant's Reply (Dkt. 52).  After careful

consideration of the applicable law, the submissions of the parties, and the entire

file, the Court concludes the motion is due to be granted.

      In this second-time removed action,[1] Plaintiff Michael Brutsman sues

"Raytheon Technologies Corporation"[2] ("Raytheon") for retaliation in violation of

Florida's private Whistle-blower's Act ("FWA"), Fla. Stat. §§ 448.101–105.  Dkt.

---

[1] Plaintiff filed an action in the Sixth Judicial Circuit in and for Pinellas County, Florida on July 10, 2023: *Michael Brutsman v. Raytheon Technologies Corporation*, No. 23-7583-CI.  Defendant removed the case on August 3, 2023: *Brutsman v. Raytheon*, No. 8:23-cv-1723-JLB-AAS. Plaintiff sought remand.  Defendant did not oppose, under a reservation of right to remove again should the information exchanged during discovery reflect that the damages sought by Plaintiff exceed the requisite amount in controversy.  Dkt. 1-3.  The amount was met, and the instant action was timely removed in March 2024.  Dkt. 1.

[2] Defendant has maintained that the proper named Defendant employer is Raytheon Company, a wholly owned subsidiary of Raytheon Technologies Corporation.  Dkt. 1 at 1n.1.

13-1 at 6–9 (state court complaint).  In October 2021, Brutsman sought a religious

exemption from Raytheon's mandatory COVID-19 vaccination policy.  Raytheon

conditionally granted the religious exemption provided Plaintiff agreed in writing

to undergo COVID-19 testing before he entered any Raytheon location and to wear

a mask while on location.  An extended written dialogue over these conditions

ensued, but Brutsman never agreed to these two conditions.  Raytheon terminated

him in February 2022.

## BACKGROUND

The following detailed chronology sets forth the relevant communications

between the parties in this whistle-blower action.  The record consists of Plaintiff's

deposition with over 40 exhibits, his declaration filed in opposition to summary

judgment, and a declaration of the senior manager of labor and employee relations

at Raytheon.  Dkts. 47-1 (deposition and exhibits); 51-1 (Brutsman declaration);

47-2 (Raytheon declaration).

## Employment Prior to COVID-19

Raytheon is a defense and government contractor.  Dkt. 47-2 ¶ 3.  In May

2019, Mr. Brutsman began working for Raytheon in the Intelligence & Space

business unit located in Largo, Pinellas County, Florida, as an on-site operations

manager.  *Id.*; Dkt. 47-1 at 59.  This Raytheon unit develops advanced sensors, training, and cyber and software solutions for civil, military, and commercial customers in numerous countries around the world.  Dkt. 47-2 ¶ 3.

In early January 2020, Brutsman was promoted to the earned value manager role.  Dkt. 47-1 at 69–70.  He reported to his manager, Justin Bird, and worked on site at the Largo manufacturing facility.  *Id*.  No one reported to Brutsman.  *Id*. at 73.  Only one other employee held a similar position in Largo.  *Id*. at 75.

When he transitioned into this role in January 2020, Mr. Brutsman worked a hybrid of three days a week in the office and two days remotely.  *Id.* at 77.  With the impeding COVID-19 pandemic, and at the direction of Mr. Bird and another manager, Brutsman requested a full-time remote arrangement around late February or early March 2020.  *Id.* at 80–83.

At this juncture, confusion arises as to when and how the working arrangement became full-time remote as opposed to three days in the office and two days remote.  At Brutsman's deposition, he testified that that he moved from a hybrid role to a full-time remote role "roughly February 2020."  *Id*. at 81. Brutsman later admits, however, that the full-time telecommuting arrangement did not begin until mid-March 2020 simultaneously with the arrival of COVID-19.  *Id.* at 81–82; Dkt. 51 ¶ 3.  Raytheon does not deny that Brutsman, like other employees, was permitted to remote work five days a week once the pandemic

arrived in the U.S., and Raytheon, like many places of employment, permitted remote work to insure employee safety.  In any event, precisely when and how the full-time remote arrangement began, although largely irrelevant, is helpful to understanding Plaintiff's position.  He believed that he could remote work forever and never needed to enter a Raytheon facility again.

**The COVID-19 Pandemic**

In the fall of 2020, Brutsman's telecommuting agreement was due to be reevaluated and renewed.  Dkt. 47-1 at 78–79, 84 & Exh. 12.  In the renewed written agreement, Plaintiff's stated reason for full-time telecommuting was "accommodating childcare and virtual schooling arrangement," although it was Mr. Bird who suggested he give that reason.  *Id*. at 78–79.  Brutsman, on his own, added a reference to masks and how working remotely permitted him to "ensure employee and site safety due to *individual mask mandate medical exemption*."  *Id.* at 79–80, 86 & Exh. 12 (emphasis added).  This agreement was signed by Mr. Bird, Brutsman, and Elisa Marchetti (Program Manager) by October 1, 2020.  *Id.* at 77–78 & Exh. 12.

At his deposition, Brutsman testified that he inserted in the agreement the reference to masks, because "wearing a mask would aggravate [his] service-connected disability."  *Id.* at 86–87.  During his 2009 tour in Iraq, he was trained in

4

masking as part of missions, both masking detainees as well as himself to learn the captive-captor dynamic. *Id*. at 88–89, 91, 138–40. For Brutsman, seeing masks and wearing a mask would likely trigger his PTSD. *Id*. at 91, 140. He discussed these concerns with Mr. Bird many times, and the two enjoyed a good working relationship. *Id*. at 87, 91–92. This October 2020 agreement is the only written telecommuting arrangement in the record.

**<u>COVID-19 Vaccination Mandate</u>**

In September 2021, Raytheon announced its intention to require all employees to be vaccinated against COVID-19. *Id.* at 92–94. Accommodations for employees choosing not to receive either partial or full vaccination would be limited to those providing religious or medical reasons. *Id.* at 94–95. Brutsman understood that the policy would extend not only to those Raytheon employees who worked on government contracts but to all its employees. *Id*. at 93–94.

By October 2021, the mandatory COVID-19 vaccination policy was firm. Raytheon directed all U.S. employees to complete a vaccination status form by October 15, 2021. *Id.* at 96–97 & Exh. 13 (website for vaccine disclosure and verification). Per the website, an employee's failure to timely submit the completed form "will be treated as a resignation from the company and your

employment will be terminated." *Id.*  Mr. Brutsman chose against vaccination and timely applied for a religious accommodation in October.  *Id.* at 97.

Before applying for the religious accommodation, Mr. Brutsman disclosed his unvaccinated status to his manager Mr. Bird and Krista Adams in the Human Resources department.  *Id.* at 21, 97–98.  Based on Brutsman's concerns about the governing policies and data privacy, Bird and Ms. Adams placed him in contact with Raytheon's legal counsel.  *Id.* at 98.  After discussing his concerns with Raytheon's legal counsel, he refused to submit answers into the database so as not to disclose his vaccine status to the disclosed two third-party databases.  *Id.* at 99. Brutsman had "more than two, less than five" Skype or Teams meetings with Bird and Adams about his reticence to disclose his unvaccinated status.  *Id.* at 101.

**<u>Seeking Religious Accommodation</u>**

On October 14, 2021, Mr. Brutsman submitted his religious accommodation request via the hyperlink provided by Raytheon.  *Id.* at 117 & Exh. 19.  He did not mention medical conditions or disabilities in his religious accommodation request. *Id.* at 119 & Exh. 19.  He testified that his objection to the vaccine "was based on religious grounds . . . above everything else," but he also objected to the testing, masking, and the vaccine itself.  *Id.* at 120.  He also shared at deposition his prior physical reaction when he received "three swine flu vaccines" within a month,

6

which reaction went undiagnosed.  *Id.* at 120.  He confirmed, however, that he never requested a medical accommodation pertaining to a medical condition preventing him from taking the vaccine.  *Id.* at 120.  He sought only a religious exemption.

On October 27, 2021, Raytheon emailed a COVID-19 update to all employees.  *Id.* at 102–03 & Exh. 14.  The new vaccination deadline was set to December 8 with the following directive as to reasonable accommodations:

> If you cannot get vaccinated against COVID-19 due to a medical condition or religious-based reason, you may submit a request for [hyperlink for reasonable accommodation].

*Id*. at 103–04 & Exh. 14.  The submission for an accommodation request was due by November 1, and the email cautioned that if not submitted, "you will be placed on <u>unpaid</u> leave starting Dec. 9 until the request is resolved."  *Id.* at Exh. 14 (emphasis in original).


**<u>Conditional Grant of Religious Accommodation</u>**

On November 2, 2021, HR Accommodation Manager, Brenda Luciano, emailed Mr. Brutsman informing him that his October submission for a religious accommodation was ready to proceed to the next step.  *Id.* at 130–31 & Exh. 20. Raytheon found Brutsman expressed sincerely held religious beliefs excepting him from the requirement of being vaccinated.  *Id.*  A religious accommodation was

granted on the condition that an employee such as Brutsman, who is "100% remote and/or hybrid," must 1) show a negative Covid test that was taken within 72 hours of entry to a company location, 2) wear a mask while on site, and 3) social distance while on site.  *Id.* at 132 & Exh. 20.

On November 3, Mr. Brutsman responded to Ms. Luciano with his concerns about the proposed conditions and his belief that the conditions were discriminatory and retaliatory:

> I believe that *the accommodation of testing proposed is discriminatory* in nature.  Due to my religious beliefs, I am being asked to submit to an additional requirement as a condition of employment.  Additionally, it is evident from available data . . . [that] vaccination does not prevent acquiring Covid-19, or transmitting the virus.  Therefore, I would pose no greater risk than anyone who is vaccinated.  It is apparent that the request for testing is specifically due to my request for religious accommodation.  Furthermore, *this could be viewed as a retaliation based on my declaration of a sincerely held religious belief*.

> Also, I have a current telecommuting agreement [October 2020] to work 100% remote because *I have a military service related injury that prevents me from wearing a mask* (documented in the agreement).  My disability status was declared while onboarding in May 2019. The proposed accommodation, is not a reasonable accommodation due to *my disability*.

*Id.* at 133–36 & Exh. 21 (emphasis added).  Although he wrote into the October 2020 telecommuting agreement that he had a "mask mandate medical exemption," Mr. Brutsman had submitted only two pieces of information (at this or any time) to Raytheon—his October 2021 online request for a religious exemption with no mention of a medical exception, and the November 3 response asserting his

"disability status." *Id.* at 150. Even assuming his "disability status" was disclosed at his initial hiring in 2019, there was no mask mandate then, much less a premonition of the March 2020 COVID-19 outbreak in the U.S.

On November 10, Ms. Luciano responded. *Id.* at Exh. 22. She reiterated the company's proposed requirements of accommodation, explained an additional medical accommodation needed to be requested, and set a November 15 deadline to agree to the conditions:

> Your current position is remote/hybrid, if there is a need for you to come onsite, you would need to: 1. Provide a negative Covid test result 72 hours, prior to onsite visit . . . 2. Wear a mask 3. Social distance. . . . If there is a medical reason you are not able to comply with the required reasonable accommodation, a medical accommodation request will need to be submitted.
> . . . .
> Please confirm your agreement with the proposed reasonable accommodation by November 15, 2021. The company has given you a reasonable accommodation for your unvaccinated status. The reasonable accommodation for testing, masking and social distancing is a requirement of the accommodation. If you do not agree at this time, then we will need to deny your request.

*Id.* at 144–46, 149–50 & Exh. 22.

In this same response, Ms. Luciano addressed Brutsman's privacy concerns associated with vaccine status and testing concerns about its emergency use authorization ("EUA") from the FDA. *Id.* at Exh. 22. Raytheon provided employees an Abbott nasal swab test or, if medically required, an alternative saliva test would be accepted but not provided by the company. *Id.* at Exh. 22. Mr.

9

Brutsman admitted at deposition that he never submitted a request for a medical (as opposed to religious) accommodation. *Id.* at 147. Nor did he submit a medical reason from a medical provider that would prohibit him from using the company-provided Abbott swab test or that would justify needing a saliva test.

On November 11, Mr. Brutsman asked to extend the November 15 deadline so that he may discuss the proposals with his healthcare provider. *Id.* at 152 & Exh. 23. He also requested the "exact specifics on what testing is required, what face coverings are specifically required/acceptable and protocols on wearing." *Id.* at Exh. 23. That same day, Luciano answered his questions and, after repeating the accommodations for 100% remote employees, allowed him until November 20, 2021, to decide:

> At this time, there is no *specifics on what mask is required to be worn when on the property. I have included some information regarding the testing brand.* . . . I will change your deadline date to November 20, 2021.
> . . . .
> If there is a medical reason you are unable to take the nasal swab test, a medical accommodation request for the specific saliva test needs to be requested and will be reviewed. The request will require a medical note from your treating provider stating the nasal swab test cannot be taken and provide recommended alternatives. *The testing for your vaccine exemption accommodation is a requirement and not optional.* [Please refer to company FAQs and your HR generalist for you concerns about testing]. . . . Testing will continue until the company determines that testing is no longer required to ensure the safety of employees working on-site.
> . . . .
> Please respond to accept or decline the available accommodations.

10

*Id.* at 153 & Exh. 24 (emphasis added).  Ms. Luciano reminded him that he had

submitted a religious exception and not a medical exception.  She recommended

that if he was not able to follow the masking requirement due to a medical reason,

he should submit a medical exception accommodation.  *Id.*

On November 17, 2021, Brutsman responded and maintained that he was

100% remote and that his telecommuting agreement (October 2020) documented

his "medical exemption for masks."  *Id.* at 153–54 & Exh. 25.  He continued:

> I don't require a new accommodation request. Just a different
> reasonable accommodation to continue working safely while the
> company honors my legal right to practice my religion.  The company
> legally needs to work with me to determine a reasonable
> accommodation to the vaccine requirement, as that is what is being
> mandated.
> . . . .
> Also, I am being made aware of these policies just now via email. May
> you please point me to the documented company policy that states, I
> must accept the exact "proposed" accommodations by November 15th?
> . . . .
> *If the company terminates my employment, I will invoke my right to*
> *counsel, and I will immediately file an ADA violation.*

*Id.* at Exh. 25 (emphasis added).  The "ADA violation" apparently refers to his

service-related disability of PTSD stemming from his training involving masks.

*Id.* at 88–89, 91, 138–40.  The record does not contain any documentation of his

disability, or anything related to masks other than his own reference to a "mask

mandate medical exemption" in the October 2020 telecommuting agreement.

11

**Interactive Process concerning Reasonable Accommodation**

On December 6, 2021, Ms. Luciano denied the religious accommodation, found there was no conflict between any religious belief and testing, and confirmed Brutsman had provided no supporting medical documentation to be excused from testing or masking:

> Based on your request form dated October 14, 2021, we determined that you had a sincerely held religious belief for which we would excuse you from the mandatory vaccination requirement. As part of the accommodation, however, we require you to be tested for COVID-19 within 72 hours before reporting to a Raytheon site and that your wear a mask while on site. *Although you may work remotely 100% of the time, we expect you to comply with these site safety requirements on those rare occasions when you may be required to be on site.* Based on your most recent email of November 17, 2021, we understand that you are refusing to agree to testing and wearing a mask when reporting to a site. *Although you have indicated there may be medical reasons for this refusal, you have not provided any supporting medical documentation.*
>
> Based on the foregoing, *your request for an accommodation against vaccination is denied. We did not determine that there is any conflict between any religious belief and testing for COVID-19.* Additionally, *you have not provided us with any medical documentation to support your request to be excused from testing or masking.*
>
> . . . As previously communicated, all employees who do not obtain an accommodation against being vaccinated are currently required to be fully vaccinated by December 8, 2021.

*Id.* at 155, 157–58 & Exh. 26 (emphasis added). Brutsman promptly responded, denying that he had ever "refused" to agree to testing and masking. *Id.* at 158 & Exh. 27.

In his response, Brutsman stated that he had asked for specific information on those topics from Raytheon to discuss with his physician, but claimed Raytheon never provided the information. *Id.* He indicated that he would not provide any supporting medical documentation because there was no federal mandate, executive order, or law requiring masks or requiring that those employees with approved accommodations must test. *Id.* An additional reason he gave for not providing medical records was that Raytheon acknowledged his disability status by signing the October 2020 telecommuting agreement. Finally, he raised discrimination: "Requiring testing and masking for only those employees who have approved accommodations is discriminatory." *Id.*

Ms. Luciano responded to Brutsman's last email and specifically requested medical documentation from Mr. Brutsman's health care provider to support a medical need for not wearing a mask. *Id.* at 159–60 & Exh. 28. She proposed an alternative face covering—a clear shield. *Id.* at 161 & Exh. 28. Luciano also acknowledged that Brutsman indicated his refusal to test and made it clear that to approve his case, Raytheon required that he provide "medical documentation [showing why he could not test] along with agreeing to masking." *Id.* at Exh. 28.

Meanwhile, Raytheon continued to send companywide emails. On December 7, 2021, Raytheon informed all employees not fully vaccinated that the deadline for compliance was extended to January 18, 2022. *Id.* at 104–06 & Exh.

13

15. In this communication, Raytheon again articulated how a refusal to be vaccinated absent approved reasonable accommodation would be treated:

> Verification of full COVID-19 vaccination by Jan. 18, 2022, is a condition of employment for employees working in the U.S. If you do not have an approved accommodation and choose not to be vaccinated and verify your status, **your choice will be treated as a resignation from the company and your employment will be terminated**.

*Id.* at 105 & Exh. 15 (emphasis in original). The resignation-termination caveat was also placed under the frequently-asked-questions section:

> 6. I am not vaccinated and intend to leave the company. What should I do?
> If you choose not to be vaccinated, **your choice will be treated as a resignation from the company and your employment will be terminated**. Please notify your manager of your decision to begin making plans for transition.

*Id.* at 109 & Exh. 15 (emphasis added). This email, and another one, announced that all unvaccinated and partially vaccinated employees who entered a Raytheon facility must complete weekly COVID-19 tests beginning January 4. *Id.* at 106, 111 & Exh. 15.

Raytheon sent another email in mid-December reminding everyone of the testing and masking requirements for those who work on site, off-site, and exclusively from home. *Id.* at 111 & Exh. 16. On January 12, 2022, all employees were told that the testing requirements applied to the following partially vaccinated or unvaccinated employees, such as Brutsman:

14

· **[A]ll** onsite non-compliant employees, regardless of whether they have received approval for or have requested an accommodation.
· **Also includes any non-compliant employee working from home full or part time throughout the pandemic, prior to entering a facility.**

*Id.* at 113–14 & Dkt. 17 (emphasis added).

## Continued Communications in January 2022 Leading to Disciplinary Action

On January 19, 2022, Mr. Brutsman responded to Ms. Luciano's last email before the holiday break. *Id.* at 161–62 & Exh. 29. He maintained that he had not refused anything because Raytheon had not provided him with answers to all his questions. *Id.* at Exh. 29. In this email, he lists his numerous questions about masks, testing, and Raytheon's right to request his medical information—many of which are repetitive from prior communications. *Id.* at Exh. 29.

On January 26, 2022, Krista Adams forwarded to Brutsman additional information with highlighted specific responses prepared by Debi Horvath (with HR) to his questions. *Id.* at 163 & Exh. 30. On February 2, 2022, Mr. Brutsman responded to Ms. Adams, stating that Ms. Horvath had still not answered all his questions. *Id.* at 165 & Exh. 31. He expressed his intention to take the mask information to his doctor but could not get an appointment until March 30. *Id.* at Exh. 31. In this correspondence, and in prior emails, Brutsman claimed he had never refused the testing or mask requirement because he had still not received

15

sufficient answers from Raytheon.  *Id.* at Exh. 31.  He also continued to fault the company for discriminating against him by adding conditions to his approved religious exemption.  *Id.* at Exh. 31.

Ms. Horvath responded on February 3.  *Id.* at 165 & Exh. 32.  She assured him that Raytheon's accommodation process "has been fully vetted and approved and the Company is confident it is following the law."  *Id.* at Exh. 32.  She concluded that his response "to agree or not to testing as part of the vaccine exemption accommodations" was expected by February 4, 2022.  *Id.* at Exh. 32.

On February 4, Brutsman responded to Ms. Horvath.  *Id.* at 167 & Exh. 33. He again maintained that he had not received answers to his questions about testing, masking, and what personal sensitive information the company had stored and shared without his consent.  *Id.* at Exh. 33.  He reiterated that he was "not in any way, shape, or form resigning" and was "not refusing anything."  *Id.* at Exh. 33.  He concluded: "I have filed a 3 part complaint with the EEOC based on religious discrimination, disability discrimination, and retaliation for reporting discrimination."  *Id.* at Exh. 33.  The record does not contain any complaint or charge filed with the EEOC until after Brutsman received the final written disciplinary warning.

16

**Disciplinary Action and Termination**

The afternoon of February 4, Ms. Adams emailed Brutsman that she did "not see an agreeance to testing" in his response. *Id.* at 169 & Exh. 34. Raytheon needed "at minimum" an agreeance to testing as part of your accommodation "by end of day" or suffer the consequence for noncompliance—disciplinary action. *Id.* at 169 & Exh. 34. At his deposition, Mr. Brutsman explained that he "took issue with entering an agreement in perpetuity." *Id.* at 169. (Yet, on November 20, 2021, Ms. Luciano wrote that testing would continue until Raytheon determines it is no longer required for the safety of employees working on site. *Id.* at Exh. 24.)

On February 7, 2022, Ms. Horvath emailed Mr. Brutsman and copied Ms. Adams:

> As I [] mentioned previously, if you have a medical reason due to a disability or medical condition that indicates it's unsafe to take the nasal swab company provided [paid for] test, you can submit.
> With that said, I need your decision regarding agreement to the accommodations which include testing.
> No response or indication that you agree, will be presumed as you do not agree to the accommodations.

*Id.* at Exh. 35. At his deposition, he affirmed that an agreement was never reached while simultaneously contending that he "never refused" testing. *Id.* at 170.

That same day, Mr. Brutsman responded to the February 4 and 7 emails from Ms. Horvath. *Id.* at 170 & Exh. 35. As he had asked earlier, Brutsman wanted to know why Raytheon did not recognize "immunity through prior

17

infection" and why Raytheon did not have a test that was approved and "not under EUA [emergency use authorization]." *Id.* at Exh. 35. He noted that "EHS [Environmental, Health, and Safety] is not able to provide medical care, prescribe medicine, or determine or suggest a medical experiment for employees to participate in." *Id.* at Exh. 35. He commented that Raytheon "never provided me with a religious accommodation [but] only denied my religious accommodation on the grounds of additional medical requirements as conditions of employment." *Id.* at Exh. 35. In Brutsman's opinion, Raytheon imposed new conditions of employment (testing and masking) on a discriminatory basis—for those employees who applied for a religious accommodation. *Id.* at Exh. 35.

When asked, Mr. Brutsman admitted that he knew of no other employee who was granted either a religious or disability exemption who did not also have to agree to testing and wearing a mask. *Id.* at 177. Moreover, according to Raytheon, 41 other employees in Brutsman's business unit also failed to comply with the COVID-19 vaccination policy or receive an exemption to the policy. Dkt. 47-2 ¶ 10. Like Brutsman, they all received corrective action prior to their separation date. *Id.* Spanning all the business units, over 100 employees were considered to have resigned for failure to abide by or receive an exemption to the policy. *Id.*

On February 10, 2022, Ms. Horvath conclusively denied Brutsman's reasonable accommodation request:

Based on your request dated October 14, 2021, we determined that you had a sincerely held religious belief precluding you from receiving the COVID-19 vaccination. As part of the accommodation, we require you to be tested for COVID-19 within 72 hours before reporting to a Raytheon site and that you wear a mask while on site. *Although you may work remotely 100% of the time, we expect you to comply with these site safety requirements on those rare occasions, when you may be required to be on site.* Based on your email of February 7, 2022, we understand that you refuse all testing for COVID-19. We note that although you have declined to wear a mask if required to be on site, we explained to you that we agreed to furnish you with a plastic face shield to use as an alternative; thus, the mask is a non-issue for purposes of your presence on site.

Based on the foregoing, your request for an accommodation against vaccination is denied. **This denial is not based on a final determination as to whether you have a sincerely held religious belief against vaccination, but rather based on your refusal to agree to submit to testing in the event you are required to be present on site.** We did not determine that there is any conflict between any religious belief and testing for COVID-19.

*Id.* at 171 & Exh. 36 (emphasis added). It should be noted that on December 6, 2021, Raytheon told him that they found no religious conflict with testing, as opposed to the vaccine itself. *Id.* at Exh. 26.

Also, on February 10, 2022, Raytheon issued to Plaintiff a final written warning that his refusal to agree to testing and wearing a mask upon entry to a facility by February 11 would be considered as his intent to resign:

**<u>Conduct Warranting Disciplinary Action</u>**
Since the beginning of the COVID-19 pandemic, Raytheon Technologies has communicated to all US-based employees a series of actions to address the increased risk and uncertainty COVID-19 variants pose in the workplace. As part of our efforts to maintain a safe

19

and healthy work environment, the Company has chosen to implement a mandatory COVID-19 vaccination policy.

On September 15, 2021, Raytheon Technologies informed all US-based employees of their requirement to become fully vaccinated against COVID-19 or to request and receive approval for a reasonable accommodation to be exempted from the requirement by the specified deadline. The policy was subsequently updated to include an effective date of January 18, 2022. The Company has informed all employees of the requirement and the deadline for compliance through various forms of communication.

This requirement has been communicated as a condition of employment. Unvaccinated employees who fail to verify their full COVID-19 vaccinated status or request and receive approval for a reasonable accommodation to be exempted from the requirement will be subject to disciplinary action, up to and including termination of employment.

After repeated communication of this requirement, you have failed to comply with the Company's COVID-19 vaccination policy.
. . . .
**Disciplinary Action[]**
This serves as a Final Written Warning that you have either failed to verify your full COVID-19 vaccination status or request and receive approval for a reasonable accommodation to be exempted from the requirement.  As a result, you are in violation of the Raytheon Technologies' mandatory COVID-19 vaccination policy.

If you do not initiate the vaccination process and verify your status by 5PM central on February 11, 2022, or do not have an accommodation request pending at that time, your inaction will be treated as a resignation from the company. Your employment will be terminated on February 14, 2022[.]

Dkt. 47-1 at 173 & Exh. 37.  Plaintiff refused to sign the form.  *Id.*

20

On February 14, 2022, Raytheon issued a written termination notice. *Id.* at

174 & Exh. 38.  Plaintiff's conduct warranted termination, deemed a voluntary

resignation:

> After repeated communication of [the vaccination policy] and receiving
> a final written warning for non-compliance, this employee failed to
> comply with the Company's COVID-19 policy. [Raytheon] considers
> this termination to be a voluntary resignation.

*Id.* at Exh. 38.  Mr. Brutsman testified he never saw the termination notice. *Id.* at

175.


**EEOC activity**

In his February 4 email to Ms. Horvath, Brutsman wrote that he had filed a

complaint with the EEOC. *Id.* at Exh. 33.  There is no documentation from the

EEOC or Mr. Brutsman establishing what "complaint" to the EEOC he was

referring to on February 4. *Id.* at 180.  On the morning of February 11, 2022,

however, an EEOC representative interviewed Brutsman. *Id.* at 180 & Exh. 39.

The interviewer's notes reflect that Brutsman said he had medical

documentation of "Military Service connected" PTSD and "breathing difficulties,"

which were triggered by wearing a mask and by confrontation. *Id.* at Exh. 39.  He

told the interviewer that he disclosed he had a service-connected disability when he

was employed in 2019 but did not disclose the specifics. *Id.*  He acknowledged

that he had not sent to Raytheon any medical documentation about his condition or

21

limitations. *Id.* He told the interviewer that he submitted a telecommuting form in October 2020 that stated he had a medical condition that prevented him from using masks.

Regarding retaliation, Brutsman told the interviewer that since November 2021, he had told Raytheon that masking on site and indefinite testing using the experimental swab test were extra conditions applied to only those individuals who submitted a religious or medical accommodation and therefore discriminatory. At the close of the interview, Brutsman stated that he wished to file a charge of discrimination.

On February 25, 2022, Plaintiff filed a written charge of discrimination with the EEOC and amended the charge on March 1, 2022. *Id.* at 181 & Exh. 40. Mr. Brutsman testified he "engaged in protected activity" when he told Raytheon in his February 4 email that he was going to the EEOC. *Id.* at 193–94. This action ensued.

Raytheon seeks final summary judgment on the one-count whistle-blower complaint. First, Raytheon contends that Brutsman's contacting the EEOC did not constitute an objection, or protected activity, because Raytheon's vaccination policy was legal. Second, Brutsman cannot establish retaliatory causation. The policy that led to Brutsman's termination was in place and communicated to all employees by mid-September 2021, long before he contacted the EEOC in

22

February.  Finally, Raytheon's reason for termination was not pretextual. Brutsman refused to comply with the company's lawful vaccine policy by refusing to agree to the two conditions of testing and masking, and Brutsman cannot prove Raytheon's decisionmakers acted for any other reason.  Brutsman opposes on all grounds.

## LEGAL STANDARD

Summary judgment is appropriate if 1) there is no genuine dispute as to any material fact and 2) the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).  A fact is material if it may "affect the outcome of the suit under the governing law[.]"  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).  A genuine dispute means evidence "such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*

The moving party bears the initial burden of identifying those portions of the record that show the lack of genuinely disputed issues of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If met, the burden shifts to the nonmoving party to present "'affirmative evidence' that would allow a reasonable jury to rule for him."  *Hinson v. Bias*, 927 F.3d 1103, 1116 (11th Cir. 2019) (quotng *Anderson*, 477 U.S. at 257).  It is not enough that "the jury might, and

legally could, disbelieve the moving party's evidence." *Id*. at 1115–16 (citation and internal quotation marks omitted).

The court may not weigh conflicting evidence to resolve factual disputes. *Anderson*, 477 U.S. at 249. Nor may the court make credibility determinations at summary judgment, even if the court doubts the veracity of one party's evidence. *Feliciano v. City of Mia. Bch.*, 707 F.3d 1244, 1252 (11th Cir. 2013).

The court must draw all reasonable inferences from the evidence in the light most favorable to the nonmoving party. *United States ex rel. Bibby v. Mortg. Invs. Corp.*, 987 F.3d 1340, 1346 (11th Cir. 2021). An inference is reasonable if it is not based on pure conjecture and speculation. *Hinson*, 927 F.3d at 1115 (citation omitted). If a party attempts to create an issue of fact through a sworn statement, that statement may "be disregarded if it 'flatly contradict[s]' earlier deposition testimony without explanation." *Pivac v. Component Servs. & Logistics, Inc.*, 570 F. App'x 899, 901 (11th Cir. 2014) (quoting *Tippens v. Celotex Corp.*, 805 F.2d 949, 953 (11th Cir. 1986)). There is a distinction, however, between discrepancies "which create transparent shams" and those "which create an issue of credibility or go to the weight of the evidence." *Id*. (citation modified).

## DISCUSSION

Florida's private sector Whistle-blower's Act forbids an employer from taking any retaliatory personnel action against an employee because that employee:

(1) Disclosed, or threatened to disclose, to any appropriate governmental agency, under oath, in writing, an activity, policy, or practice of the employer that *is in violation of a law, rule, or regulation*. However, this subsection does not apply unless the employee has, in writing, brought the activity, policy, or practice to the attention of a supervisor or the employer and has afforded the employer a reasonable opportunity to correct the activity, policy, or practice.

(2) . . . .

(3) Objected to, or refused to participate in, any activity, policy, or practice of the employer which *is in violation of a law, rule, or regulation*.

Fla. Stat. § 448.102(1), (3) (emphasis added). Section 448.102(1) protects disclosure, or threatened disclosure, to any appropriate government agency and requires submission of the violation *in writing* to the employer with a reasonable opportunity to correct. *Schmidt v. Disney Parks, Experiences and Prods., Inc.*, 721 F. Supp. 3d 1314, 1332 (M.D. Fla. 2024). Section 448.102(3) does not require written notice to the employer.

Retaliation claims under the private sector FWA are analyzed in the same manner as Title VII retaliation claims. *See Rutledge v. SunTrust Bank*, 262 F. App'x 956, 957–58 (11th Cir. 2008) (citing *Sierminski v. Transouth Fin. Corp.*, 216 F.3d 945, 950–51 (11th Cir. 2000)). In cases of circumstantial evidence, the

*McDonnell Douglas*[3] burden-shifting framework applies. *Id.* at 958. To establish

a *prima facie* case of retaliation under the FWA, the plaintiff must show: (1) that

he engaged in statutorily protected expression; (2) that he suffered materially

adverse action of the type that would dissuade a reasonable employee from

engaging in statutorily protected activity; and (3) that there is some causal link

between the protected activity and the adverse employment action. *Id.* at 958

(citing *Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001));

*Chaudhry v. Adventist Health Sys. Sunbelt, Inc.*, 305 So. 3d 809, 814–15 (Fla. 5th

DCA 2020).

      Once the *prima facie* case is established, the burden shifts to the defendant

to articulate a legitimate, nondiscriminatory reason for the employment action. If

accomplished, the plaintiff must then show the defendant's reason was

pretextual—both untrue and motivated by retaliatory *animus*. *See Patterson v. Ga.

Pac., LLC*, 38 F.4th 1336, 1352 (11th Cir. 2022) (citing *Gogel v. Kia Motors

Manuf. of Ga., Inc.*, 967 F.3d 1121, 1136 (11th Cir. 2020) (*en banc*)). An

employee cannot rebut a reason by simply disagreeing with the wisdom of that

reason or by substituting his own business judgment for that of the employer. *Id.*

(citing *Chapman v. Al Transp.*, 229 F.3d 1012, 1030 (11th Cir. 2000)).

---

[3] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

The ultimate burden rests with the plaintiff to establish the necessary causation for retaliation by showing that "the desire to retaliate was the but-for cause of the challenged employment action." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 352 (2013); *Kubiak v. S.W. Cowboy, Inc.*, 164 F. Supp. 3d 1344, 1365 (M.D. Fla. 2016) (quoting *Nassar* and applying the but-for test in private FWA case); *Chaudhry,* 305 So. 3d at 817 (holding that *Nassar* requires "but-for"—not the less stringent "motivating factor"—causation standard under private FWA).  Brutsman must prove that had he not written the February 4 email informing Raytheon he had filed a complaint with the EEOC, he would not have been terminated.  *See Gogel*, 967 F.3d at 1135 (citing *Jefferson v. Sewon Am., Inc.*, 891 F.3d 911, 924 (11th Cir. 2018)).

**Preliminary Observations and Findings**

This case does not involve a termination for refusal to take the COVID-19 vaccine.  Nor was Plaintiff terminated for poor performance as he often received recognition for his work.  Mr. Brutsman was terminated for refusing to agree to test before entering a Raytheon facility and to wear a mask or face shield while on site.

All employees were informed about the company mandatory vaccine policy in mid-September 2021.  By mid-October 2021, they were told about the

27

consequences of failing to seek an exemption—deemed resignation and terminated.  Raytheon conditionally approved a religious exemption for Brutsman.  Brutsman never submitted a medical exemption.

If the employee successfully obtained an exemption, then other conditions were imposed for the health and safety of all employees.  For 100% remote employees with exemptions, like Brutsman, they must agree in writing to test 72 hours prior to entering a facility and must wear a mask while on site.  These conditions would be imposed in the event they were asked to come on site.  For various reasons discussed below, Brutsman did not agree to these two conditions.  Brutsman did not provide any medical documents to support his contention that he could not wear a face mask or a clear face shield.  Nor did he provide medical documentation showing he could not use the company provided nasal swab test or a different type of test.

**<u>Protected Activity</u>**

Mr. Brutsman identifies the sole protected activity as informing Ms. Horvath in writing on February 4, 2022, that he had filed a "complaint with the EEOC based on religious discrimination, disability discrimination, and retaliation for reporting discrimination."  Dkt. 47-1 at Exh. 33.  The record, however, shows no complaint or charge of discrimination filed with the EEOC until February 25,

28

eleven days after he was terminated. *Id.* at 181 & Exh. 40. Prior to this date,
EEOC records contain notes of an EEOC interview with Brutsman. *Id.* at 180 &
Exh. 39. The interview occurred on February 11, the day after Raytheon issued the
written final disciplinary warning. Raytheon had no knowledge of these interview
notes before his termination on February 14.

Although Brutsman pleaded a violation of § 448.102(1) in his complaint, his
responsive filings touch on § 448.102(3) as well. The language of both subsections
(1) and (3) require that the activity, policy, or practice of the employer "is in
violation of a law, rule, or regulation." Fla. Stat. § 448.102(1)(3). "There is a split
among the Florida intermediate appellate courts regarding whether [the FWA]
requires a plaintiff to prove an actual violation of a law, rule, or regulation, or
whether a plaintiff need only show a good faith, objectively reasonable belief."
*Schmidt*, 721 F. Supp. 3d at 1333 (citing *Butterfield v. JetBlue Airways Corp.*, No.
20-13473, 2022 WL 291003, at *5 (11th Cir. Feb. 1, 2022)); *Kearns v. Farmer
Acquisition Co.*, 157 So. 3d 458, 465 (Fla. 2d DCA 2015) (requiring actual
violation); *Aery v. Wallace Lincoln-Mercury, LLC*, 118 So 3d 904 (Fla. 4th DCA
2013) (accepting good faith standard). Regardless of the unresolved conflict
certified by some Florida district courts of appeal, neither party relies on the "good
faith" standard.

29

Brutsman takes the position that Raytheon's COVID-19 and accommodation policies were unlawful and discriminatory.  Dkt. 51 at 2.  Raytheon contends that a COVID-19 vaccination policy that offers alternative safety measures, like its own policy, is non-violative of any law, rule, or regulation.  Raytheon cites two favorable authorities outside this jurisdiction.  Dkt. 47-3 (attaching copy of *Leake v. Raytheon Tech. Corp.*, No. 23-15320, 2024 WL 1854287 (9th Cir. Apr. 29, 2024) (unpublished); Dkt. 47-4 (attaching copy of *DeVore v. Univ. of Ky. Bd. of Trs.*, 118 F.4th 839 (6th Cir. 2024), *cert. denied*, 145 S. Ct. 1903 (2025)).  These cases assume, but do not discuss, the testing and masking conditions placed on unvaccinated employees is not violative of any law, rule, or regulation (apart from discrimination laws).  In any event, both cases determine that the employee's claims fail under the causation prong of the *prima facie* case.

In the context of this case, there is no law, rule, or regulation cited or found declaring Raytheon's COVID-19 vaccination policy unlawful.  Additionally, violations of a company's own internal rules and policies, as opposed to violations of a federal (or state) rule or regulation, are not generally considered violations of law under § 448.102(3).  *Ramirez v. Bausch & Lomb, Inc.*, No. 8:10-cv-2003-T-35TGW, 2015 WL 12805166, at *3 (M.D. Fla. Apr. 2, 2015) (citation omitted).  Thus, the COVID-19 policy of requiring unvaccinated and partially unvaccinated employees to test and mask before entering a Raytheon facility was not unlawful—

at least during all times relevant to this case. The conditions, however, could be unlawful FWA retaliation if the employee tied his own specific religious or medical needs to the conditions of testing and masking and the employer thereafter acted in retaliation.

Aside from the issues surrounding the vaccine mandate and accommodations, there is no question that violations of employment discrimination, disability, and retaliation laws are actionable under the FWA. Here, Raytheon conditionally granted Plaintiff's religious accommodation and found that he possessed a sincerely held religious belief to justify excusing him from the vaccine mandate. Brutsman took issue, however, with the conditions. As early as November 3, Brutsman informed Raytheon in writing the testing condition was discriminatory because it was imposed only after he filed for a religious accommodation. Dkt. 47-1 at 133–36 & Exh. 21. He wrote that the conditions of testing and masking "could be viewed as a retaliation based on my declaration of a sincerely held religious belief." *Id.* He also declared that masking was not a reasonable accommodation due to his military service-related disability. *Id.*

In the email of November 17, Brutsman wrote that he would "immediately file an ADA violation" if Raytheon terminated him. Dkt. 47-1 at Exh. 25. On January 26, he reminded Ms. Adams that the company discriminated against him by adding conditions to his approved religious exemption. *Id.* at Exh. 31. Finally,

on February 4, he wrote to Ms. Horvath that he had filed a complaint with the EEOC based on religious discrimination, disability discrimination, and retaliation for reporting discrimination. *Id.* at Exh. 33.

Standing alone, the February 4 email constitutes protected activity under the FWA to satisfy a *prima facie* case. *Cf. Gogel*, 967 F.3d at 1135 (assuming plaintiff established *prima facie* case based on filing of first EEOC charge in Title VII retaliation case). Brutsman informed Raytheon in writing that he had filed a complaint with the EEOC, the federal agency responsible for handling charges of employment discrimination and retaliation. This one complaint or objection, however, must not be viewed in a vacuum. Even if this sole communication is considered protected activity under the FWA, Brutsman must establish causation and pretext.

## **Causation**

Temporal proximity in a retaliation case may be used to establish causation as well as pretext. *Patterson*, 38 F.4th at 1352 (discussing temporal proximity under causation); *Johnson v. Mia.-Dade Cnty.*, 948 F.3d 1318, 1327–28 (11th Cir. 2020) (discussing temporal proximity under pretext). As to causation, "[t]he general rule is that close temporal proximity between the employee's protected conduct and the [adverse action] is sufficient circumstantial evidence to create a

32

genuine issue of material fact of a causal connection." *Patterson*, 38 F.4th at 1352 (quoting *Brungart v. BellSouth Telecomms., Inc.*, 231 F.3d 791, 799 (11th Cir. 2000)). The Eleventh Circuit has held that three to four months between the protected expression and the adverse action is insufficient without other evidence to show the causation element in the *prima facie* case. *Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004). One month, however, has been found to be sufficient. *Id.*; *Collins v. Peco Foods, Inc.*, No. 7:22-cv-1139-LSG, 2023 WL 6200806, at *7 (N.D. Ala. Sept. 22, 2023) (citing *Higdon* and finding one month satisfies causation element in *prima facie* case for Title VII retaliation).

Undoubtedly, Brutsman's February 4 email about filing a complaint with the EEOC is at least part of the causal link to his disciplinary warning of February 10 and termination on February 14. If the February 4 email is viewed in isolation, the temporal proximately of several days is sufficient to establish causation under the *prima facie* case. Nonetheless, suspicious timing alone does not satisfy the causation inquiry under pretext. *See Gogel*, 967 F.3d at 1136 n.15 (citing *Johnson*, 948 F.3d at1328) (noting that "[w]hile close temporal proximity between the protected conduct and the adverse employment action can establish pretext when coupled with other evidence, temporal proximity alone is insufficient").

**Pretext**

Raytheon proffered legitimate, non-retaliatory reasons for both the conditions—testing and masking. As to testing prior to coming on site, Raytheon wanted to protect its employees from infection from a positive-testing person. The masks were required for safety and health protection reasons for employees while on site. Plaintiff's objections to these two conditions, although made in earnest, merely question the wisdom of his employer's reasons. *See Pennington*, 261 F.3d at 1267 (quoting *Combs v. Plantation Patterns*, 106 F.3d 1519, 1543 (11th Cir. 1997)). The health and safety of employees were reasons that not only might, but did, motivate some employers to impose safeguards during the COVID-19 pandemic. Although some employers may have permitted full-time remote work without an agreement to test and mask upon entry to the workplace, this does not mean that Raytheon could not enforce its own, reasonable conditions upon its remote workers for the health and safety of the entire workplace. Each employer is free to exercise its own judgment if such judgment does not violate any laws, including discrimination laws.

To show pretext, Brutsman must show both that the real reason for his termination was retaliation and that the proffered reason was false. *See Patterson*, 38 F.4th at 1352 (citing *Gogel*, 967 F.3d at 1136); *Springer v. Convergys Customer*

34

*Mgmt. Grp. Inc.*, 509 F.3d 1344, 1349 (11th Cir. 2007).  Temporal proximity must be considered in these determinations.

Plaintiff began objecting to the two conditions attached to his religious exemption as soon as he learned of them, which was three months before his February 4 announcement that he filed a "complaint" with the EEOC.  Although the Court has assumed for purposes of this summary judgment that Brutsman did file something with the EEOC before February 4, the record does not contain any such documentation from either Plaintiff or the EEOC.  The first written evidence of any communication with the EEOC is the February 11 interview notes provided by the EEOC.  Plaintiff did not file a written charge of discrimination with the EEOC until February 25, eleven days after he was terminated.

Brutsman initially proposed the specific accommodation of continuing his 100% remote work arrangement without ever visiting a Raytheon facility.  Raytheon rejected this proposal.  Raytheon maintained its position that he, a 100% remote worker, agree in writing to test and mask but only in the event he should need to come on site.

In his earliest November objections to testing and masking, Plaintiff articulated his concerns that he was being discriminated and retaliated against on the grounds of religion and disability.  He continued to raise these objections and concerns until he was terminated, and Raytheon responded to each inquiry.  Based

on the detailed questions and responses set forth above, and the entire record,

Raytheon provided more than sufficient information to answer Brutsman's

questions about testing, masking, and anything else he asked.

      Brutsman's objection to testing was that the test kits were not FDA approved

and were experimental.  Dkt. 50 at 3.  When Plaintiff asked for additional

information about the nasal swab test, Raytheon provided the available information

through links to websites of the FDA, Abbott, the CDC, and Raytheon's own

amalgamation of health information from different sources.  Dkt. 47-1 at Exhs. 24,

30.  Brutsman never sought to avoid testing based on a religious reason.  Raytheon

told him to submit medical documentation if there was some physical reason he

could not take the nasal swab, or the saliva test.  He never provided a medical

reason, other than the experimental nature of the tests.

      When Brutsman asked about masking, Raytheon had no specific

requirements for the type of mask to be worn when on the property, provided

information, and suggested he wear a clear face shield instead of an opaque mask.

Dkt. 47-1 at Exhs. 38, 30.  Raytheon made it clear Brutsman needed to provide

medical documentation regarding masking, but he admits he never did.  Relying on

his reference to "mask mandate medical exemption" in the October 2020

telecommuting agreement, he argued with Raytheon that no other medical

documentation was required.  He persisted that he sought only a religious

accommodation not a medical one. Yet, he inconsistently claimed that his service-related disability prohibited him from wearing a mask. These cyclical written exchanges lasted for almost three months.

In Brutsman's opinion, the information provided by Raytheon was never enough for him. He maintained the testing kits were experimental and his data would not be kept private. Dkt. 50 at 3. He characterizes his steadfast refusal to agree to the conditions as an inability to reach agreement. The overwhelming evidence at summary judgment shows that he began objecting three months prior to his last-minute disclosure in early February 2022 that he had filed an EEOC complaint. These objections raised medical or disability-related concerns, not religious issues, about testing and masking. Plaintiff, however, failed to provide the medical documentation necessary to demonstrate his service-related disability affected by wearing a mask.

Applying the but-for causation standard of *Nassar*, the Court finds that Brutsman would have been terminated regardless of whether he emailed Raytheon in early February that he filed something with the EEOC. Raytheon informed all employees as early as September 2021 of the vaccine mandate and set forth the consequences of failing to follow the procedures. The consequence of failing to seek an accommodation, either religious or medical, would result in "deemed resignation" or termination. Brutsman filed only a religious accommodation mid-

October, which Raytheon conditionally granted. Brutsman never agreed to the conditions.

On this record, Brutsman never showed that he was singled out, or that all employees who applied for a religious exemption were targeted. All were required to agree to the conditions of testing, masking, and social distancing while on site. Forty-one other employees in Brutsman's business unit, and 100 over all units, failed to abide by or obtain an exemption to the vaccine policy. The other employees received corrective action prior to their separation dates, and all were considered to have resigned.

The Court finds that Plaintiff has failed to put forward enough circumstantial evidence for a reasonable jury to conclude that illegal retaliation occurred. *See McCreight v. AuburnBank*, 117 F.4th 1322, 1334–35 (11th Cir. 2024). Taking into consideration temporal proximity and all the evidence, Plaintiff has failed to show that retaliation was the real reason for his termination and that the proffered reason was untrue.

Accordingly, Defendant's motion for summary judgment (Dkt. 47) is granted. The Clerk is directed to enter final summary judgment in favor of Defendant Raytheon and against Plaintiff Michael Brutsman. The Clerk is directed to terminate all pending motions and deadlines and to close the case.

**DONE AND ORDERED** at Tampa, Florida, September 15, 2025.

WILLIAM F. JUNG
UNITED STATES DISTRICT JUDGE

**<u>COPIES FURNISHED TO</u>:**
Counsel of record